# CHARLESTON.

## STATE ex rel. WEIR v. BOARD OF COMMISSIONERS OF OHIO COUNTY.

### Submitted May 1, 1917.    Decided May 15, 1917.

COUNTIES—*Expenditures*—*Nursing of Sick Prisoners.*

No statute of this state authorizes payment out of the county fund of the expenses of nursing a sick prisoner, confined in jail on a criminal charge. Secs. 1 and 2 of Ch. 161, Code, do not apply in such case; and Sec. 40, Ch. 41, Code, makes it the duty of the sheriff to provide adequate nursing for such prisoner, but does not provide for payment of the expenses thereof out of the county fund.

(POFFENBARGER, JUDGE, absent).

Original mandamus by the State, on the relation of Thomas Weir, against the Board of Commissioners of Ohio County and others.        *Writ denied.*

*D. A. McKee* and *H. A. Nolte,* for petitioner.
*F. W. Nesbitt* and *Jno. T. Simms,* for respondents.

WILLIAMS, JUDGE:

The following facts, averred in the alternative writ, are not denied: On the 2nd of December, 1916, one John Nolte killed one Robert Lee Ritz, in the city of Wheeling, and then attempted suicide by shooting himself. He was severely wounded and taken to a hospital. It became necessary to provide him with a nurse, and the prosecuting attorney, being unable to engage one at less than three dollars a day, employed relator at that price. Nolte was later indicted, tried and convicted of murder in the criminal court of Ohio county. In the matter of employing a nurse, the prosecuting attorney acted under the authority, and with the advice of the sheriff of the county, and found it impossible to employ one for less than the price stated. Relator's bill for nursing and guarding the prisoner, to prevent him from taking his own life, amounting to $111.00, was approved by the prosecuting attorney, and the criminal court of Ohio county entered an order directing it to be paid out of the state treasury. The auditor refused payment and the criminal court, on the 15th day of March, 1917, entered an order directing it to be paid out of the county treasury, and respondents likewise refused to honor said order, or pay the claim out of the county fund. Hence this application for a mandamus to compel it to do so. There is no answer or return, only a demurrer and motion to quash the alternative writ.

Relator relies on section 1, chapter 161, and section 40, chapter 41, Code of West Virginia. The former statute authorizes the jailer, (who under sec. 39, ch. 41, Code, is the sheriff,) to summon guards when he thinks it is necessary for the safe keeping of a prisoner confined in jail under charge of or sentence for crime, but limits the expense thereof to one dollar per day for each man so employed. But, in no event, can that statute be construed to embrace relator's claim to compensation for serving in a hospital, and guarding him from self destruction. The purpose of said section 1 is more clearly apparent, when the section following it is read in connection therewith. It is as follows:

"The said circuit court, before certifying any allowance,

shall inquire into the condition of the jail; if it appear that a guard was necessary because of the insecurity of the jail, it shall be chargeable to the county. But if otherwise, and the guard was necessary, the allowance shall be certified for payment out of the treasury.''

By virtue of section 4, chapter 27, Acts 1899, amending and re-enacting chapter 7 of the Acts of 1893, which created the criminal court of Ohio county and invested it with the same power and jurisdiction respecting criminal cases and procedure therein as were previously conferred upon circuit courts, that court is no doubt authorized to make an order providing for payment of the expense of guards, in a proper case. But the statute is not applicable to the facts in the present case. There is no intimation that the jail of Ohio county was insecure, or that the prisoner was likely to escape. Sections 1 and 2, chapter 161, relate only to the employment of guards for the safe-keeping of prisoners, and make provision for the manner of their payment.

Section 40, chapter 41, Code, after defining the jailer's duty in regard to keeping the jail properly aired and heated when necessary, furnishing the prisoners with sufficient and wholesome food, and with beds and bedding, cleanly and sufficient, further provides: ''In case of the sickness of any prisoner, he shall provide for him adequate nursing and attendance, and if there be occasion for it, and circumstances will permit, shall confine him in an apartment separate from other prisoners.'' This was not only the sheriff's authority to furnish Nolte with a nurse in this case, but the statute made it his duty to do so. But where do we find any authority in the statutes of the state to make the expenses thereof a charge upon the county? We are cited to no statute which so authorizes, and we know of none. On the contrary, however, sections 23 and 24, chapter 17, Code, make it unlawful for a county court to expend any money or incur any obligation or indebtedness, not expressly authorized by law to be paid or incurred by such court, and make the individual members thereof personally liable for a violation of the statute. There is no authority in law for making relator's claim a charge upon the county fund, and the respondent was justified in

refusing payment thereof. The case is controlled by the principles declared in *County Court* v. *Long,* 72 W. Va. 8, and *County Court of Tyler County* v. *Duty,* 77 W. Va. 17, 87 S. E. 256. The writ is denied.

*Writ denied.*